UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

RUTH PALACIOS, ARTURO XELO, HERALD     :
VELASQUEZ, and PABLO LABRABOR, on behalf  :
of themselves and all others similarly situated,    :
                                  :
              Plaintiffs,          :
                                  :      **COLLECTIVE AND**
     -against-                 :      **CLASS ACTION**
                                  :      **COMPLAINT**
BMS CAT, INC., WYNGATE SERVICE        :
MANAGEMENT CORP., NY PRIME           :
RESTORATION INC., CAROLINE BONNEN, and  :      **JURY TRIAL DEMANDED**
ZULLY BERNAL,                     :
                                  :
              Defendants.    :
------------------------------------------------------------------ X

       Plaintiffs Ruth Palacios, Arturo Xelo, Herald Velasquez, and Pablo Labrabor (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants BMS CAT, Inc. ("BMS CAT"), Wyngate Service Management Corp. ("Wyngate"), NY Prime Restoration Inc. ("NY Prime"), Caroline Bonnen, and Zully Bernal (collectively, "Defendants"), allege:

**NATURE OF THE ACTION**

       1.     Plaintiffs were hired as cleaners at Memorial Sloan Kettering Cancer Center ("Sloan Kettering") to disinfect patient areas during the COVID-19 crisis. Although they regularly worked up to forty-nine hours per workweek, Plaintiffs were not paid the statutorily required overtime wage rate for hours worked over forty per workweek. Moreover, at points throughout their employment, Plaintiffs' regular hourly wage rates fell below the statutory minimum wage rate of fifteen dollars per hour. Additionally, Defendants failed to furnish Plaintiffs with accurate wage statements accompanying each payment of wages and wage notices when they were hired or whenever their rate of pay

changed. Finally, BMS CAT's contract with Sloan Kettering required BMS CAT to pay all legally required minimum and overtime wages to workers used to perform disinfecting cleaning services at Sloan Kettering, making Plaintiffs and all similarly situated workers third party beneficiaries to the contract.

2.     Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt cleaning workers ("Cleaning Workers") to recover unpaid minimum and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law ("NYLL"), the New York Wage Theft Prevention Act ("WTPA"), and as third party beneficiaries to the contract between BMS CAT and Sloan Kettering.

## JURISDICTION

3.     This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because many of the events giving rise to Plaintiffs' claims arose at Sloan Kettering, which is located in this district.

## THE PARTIES

**Plaintiff Ruth Palacios**

5.     Ruth Palacios resides in Queens, New York.

6.     Palacios worked for BMS CAT and Wyngate as a cleaning worker from approximately April 15, 2020 to August 19, 2020.

**Plaintiff Arturo Xelo**

7.      Arturo Xelo resides in Queens, New York.

8.      Xelo worked for BMS CAT and Wyngate as a cleaning worker from approximately April 15, 2020 to August 30, 2020.

**Plaintiff Herald Velasquez**

9.      Herald Velasquez resides in Queens, New York.

10.     Velasquez worked for BMS CAT and Wyngate as a cleaning worker from approximately March 2020 to June 30, 2020.

**Plaintiff Pablo Labrabor**

11.     Pablo Labrabor resides in Queens, New York.

12.     Labrabor worked for BMS CAT and NY Prime as a cleaning worker from approximately March 24, 2020 to August 30, 2020.

**Defendant BMS CAT, Inc.**

13.     Defendant BMS CAT, Inc. is a Texas corporation.

14.     BMS CAT's corporate headquarters is located at 5781 Airport Freeway, Haltom City, TX 76117.

15.     BMS CAT offers corporate and residential customers disaster recovery services across the United States.  In the wake of the COVID-19 pandemic, BMS CAT has entered into contracts to provide hospitals and other institutions, including in New York City at Sloan Kettering, with COVID-19 cleaning and decontamination services.

16.     BMS CAT is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

17.     BMS CAT has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working

on goods or materials that have been moved in or produced for interstate commerce by any person.

18.     In each of the three years preceding the filing of this Complaint, BMS CAT's annual gross volume of sales exceeded $500,000.

**Defendant Wyngate Service Management Corp.**

19.     Defendant Wyngate Service Management Corp. ("Wyngate") is a New York corporation.

20.     Wyngate is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

21.     Wyngate has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

22.     Upon information and belief, within the three years preceding the filing of this Complaint, Wyngate's annual gross volume of sales exceeded $500,000.

23.     As is explained in further detail below, Wyngate and BMS CAT is a joint employer of Plaintiffs.  Combined with BMS, Wyngate's annual gross volume of sales within the last three years exceeded $500,000.

**Defendant Caroline Bonnen**

24.     Caroline Bonnen is the owner and Chief Executive Officer of Wyngate Service Management Corp.

25.     Bonnen hired Plaintiffs Palacios, Xelo, and Velasquez.

26.     Bonnen determined the wage rates of Wyngate employees, including the wage rates of Plaintiffs Palacios, Xelo, and Velasquez.

27.     Bonnen distributed checks to her foreman at Sloan Kettering, who then paid Wyngate employees, including Plaintiffs, every fifteen days.

28.     Bonnen directed Wyngate employees, including Plaintiffs Palacios, Xelo, and Velasquez, through Wyngate foremen.

29.     Bonnen exercised sufficient control over the operations of Wyngate to be considered Plaintiffs' employer under the FLSA and NYLL.

**Defendant NY Prime Restoration Inc.**

30.     Defendant NY Prime Restoration Inc. is a New York corporation.

31.     NY Prime is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

32.     NY Prime has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

33.     Upon information and belief, within the three years preceding the filing of this Complaint, NY Prime's annual gross volume of sales exceeded $500,000.

34.     As is explained in further detail below, NY Prime and BMS CAT is a joint employer of Plaintiff Labrador.  Combined with BMS, NY Prime's annual gross volume of sales within the last three years exceeded $500,000.

**Defendant Zully Bernal**

35.     Zully Bernal is the owner of NY Prime Restoration Inc.

36.     Bernal determined the wage rates of NY Prime employees, including Plaintiff Pablo Labrador, and signed their paychecks.

37.     Bernal directed NY Prime employees, including Plaintiff Pablo Labrador, through NY Prime foremen.

38.     Bernal exercised sufficient control over the operations of NY Prime to be considered Plaintiffs' employers under the FLSA and NYLL.

**BMS CAT, Wyngate, and NY Prime Were Plaintiffs' Joint Employers**

39.     In approximately March 2020, Sloan Kettering contracted BMS CAT to clean and decontaminate facilities treating COVID-19 patients.

40.     Upon information and belief, BMS CAT's service contract with Sloan Kettering required BMS CAT to hire and compensate employees in compliance with the FLSA and NYLL, meaning the contract calls for workers performing the contracted-for services at Sloan Kettering to be paid statutorily required minimum and overtime wages.

41.     Upon information and belief, BMS CAT had the power to terminate the employment of Plaintiffs and other Cleaning Workers of Wyngate and NY Prime who worked at Sloan Kettering.

42.     On or about March 21, 2020, BMS CAT provided the following letter to its subcontractors, including NY Prime, to provide to their direct employees at Sloan Kettering. A photo of the letter Plaintiffs and other subcontracted Cleaning Workers received is below:



March 21, 2020

To Whom It May Concern,

You are speaking with an employee of Blackmon Mooring & BMS CAT who is currently engaged in essential business operations. Blackmon Mooring & BMS CAT is a disaster recovery company that provides service and support to government, healthcare, and other essential businesses.

Blackmon Mooring & BMS CAT has carefully reviewed the local, state and federal directives and guidance related to the COVID-19 crisis and it is an essential business that must continue its operations. Blackmon Mooring & BMS CAT's work is critical to ensure continuity of its service and support of essential infrastructure and essential businesses, including healthcare facilities, manufacturing facilities, food and beverage processing facilities, hospitals, pharmacies, lab facilities, industrial facilities and emergency services for residential and multi-family properties.

Blackmon Mooring & BMS CAT has made every effort to identify operations that can be performed remotely and to minimize the activities that require our employees to leave their residences. The activities this employee is engaged in today cannot be done remotely. They are basic, minimum activities necessary to continue servicing and supporting our customers.

Blackmon Mooring & BMS CAT employees understand that they should not be engaging in even essential business operations if they are sick. Our employees have been informed of and are abiding by requirements and directives in our area, including social distancing, hand washing and population density requirements at our offices and customer locations.

Blackmon Mooring & BMS CAT has formed a task force for responding to the COVID-19 crisis that is available to answer any additional questions you may have. **Please direct any questions or inquires to Colin Trudo, Director of Organizational Development, at (817) 235-8915.**

Regards,

Robb Clay
Vice President

CORPORATE HEADQUARTERS: 5718 AIRPORT FREEWAY ● HALTOM CITY, TX 76117

43.    BMS CAT had management representatives present at Sloan Kettering to ensure that the work duties of Plaintiffs were performed in a satisfactory manner pursuant to the BMS CAT contract with Sloan Kettering.

44.    In approximately March 2020, a BMS CAT representative identified himself as an employee of BMS CAT and led an orientation for Plaintiff Velasquez and other Cleaning Workers at Sloan Kettering explaining in detail their roles during their employment.

45.     A BMS CAT representative was present at Sloan Kettering to meet with the subcontractors' foremen and direct the work of Plaintiffs and other subcontracted Cleaning Workers.  This representative would also bring masks and BMS CAT shirts to be distributed to Plaintiffs and other subcontracted Cleaning Workers.

46.     BMS CAT required Plaintiffs and other subcontracted Cleaning Workers to wear shirts bearing BMS CAT's logo while performing their work duties at Sloan Kettering.  A photo of the shirt Plaintiffs and other subcontracted Cleaning Workers were required to wear is below:



47.     BMS CAT submitted invoices to Sloan Kettering reflecting Plaintiffs' purported regular and overtime wage rates paid.

48.     BMS CAT determined the wage rates paid to Plaintiffs and other Cleaning Workers.

49.     For example, in approximately March 2020, Plaintiff Velasquez and other Cleaning Workers complained to a BMS CAT representative that they were going to be paid $12.25 per hour by Wyngate. The BMS CAT Representative told Plaintiff Velasquez and the other Cleaning Workers that he would contact Caroline Bonnen and discuss an

increase in their wage rate. Within a few days, the wage rate of Plaintiffs was increased to $15 per hour.

50.     All of BMS CAT's subcontracted Cleaning Workers, including Plaintiffs, were required to sign a time sheet titled "BMS Essential Services" at the start and end of their work shifts at Sloan Kettering.

51.     Upon information and belief, BMS CAT maintained Plaintiffs' signed time sheets for work conducted at Sloan Kettering.

52.     BMS CAT jointly employed Plaintiffs and other Cleaning Workers with Wyngate and NY Prime.

## FACTUAL ALLEGATIONS

53.     As their primary work duties at Sloan Kettering, Cleaning Workers, including Plaintiffs, wiped, mopped, swept, sanitized, and disinfected hallways, patient rooms, bathrooms, and any other areas and surfaces exposed to COVID-19 patients.

54.     Cleaning Workers, including Plaintiffs, wore face shields, disposable gowns, N95 masks, and other personal protective equipment (PPE) while completing their work duties at Sloan Kettering.

55.     Cleaning Workers spent more than 25% of their workdays at Sloan Kettering performing physical work duties, such as cleaning, mopping, and wiping.

56.     Defendants failed to furnish Plaintiffs with a wage notice upon hiring.

57.     Defendants failed to furnish Plaintiffs with wage statements with each payment of their wages throughout their respective employment periods.

**Ruth Palacios's Hours Worked and Wages Pay**

58.     From approximately April 15, 2020, to August 19, 2020, Palacios regularly worked approximately forty-two to forty-nine hours per workweek, working seven days

per week from approximately 8:00 a.m. to 4:00 p.m. each day, with a one-hour break each day.

59.     Every two weeks throughout this period, Palacios was off one Sunday.

60.     Wyngate paid Palacios her wages by check every fifteen days.

61.     On occasion, Wyngate paid Palacios her wages in cash.

62.     From approximately April 15, 2020, to June 30, 2020, Wyngate paid Palacios $15.00 per hour worked, including for hours worked over forty per workweek.

63.     From approximately July 1, 2020, to the end of her employment, Wyngate paid Palacios $12.25 per hour worked, including for hours worked over forty per workweek.

**Arturo Xelo's Hours Worked and Wages Pay**

64.     From approximately April 15, 2020, to August 19, 2020, Xelo regularly worked approximately forty-two to forty-nine hours per workweek, working seven days per week from approximately 8:00 a.m. to 4:00 p.m. each day, with a one-hour break each day.

65.     Every two weeks throughout this period, Xelo was off one Sunday.

66.     Wyngate paid Xelo his wages by check every fifteen days.

67.     On occasion, Wyngate paid Xelo his wages in cash.

68.     From approximately April 15, 2020, to June 30, 2020, Wyngate paid Xelo $15.00 per hour worked, including for hours worked over forty per workweek.

69.     From approximately July 1, 2020, to the end of his employment, Wyngate paid Xelo $12.25 per hour worked, including for hours worked over forty per workweek.

**Herald Velasquez's Hours Worked and Wages Pay**

70.     From approximately March 2020 to June 30, 2020, Xelos regularly worked approximately forty-two to forty-nine hours per workweek, working seven days per

10

week from approximately 8:00 a.m. to 4:00 p.m. each day, with a one-hour break each day.

71. Throughout his employment with Defendants, Velasquez was only allowed two days off.

72. Wyngate paid Velasquez his wages by check every fifteen days.

73. On occasion, Wyngate paid Velasquez his wages in cash.

74. Throughout his employment with Defendants, Wyngate paid Velasquez $15.00 per hour worked, including for hours worked over forty per workweek.

**Pablo Labrador's Hours Worked and Wages Pay**

75. From approximately March 24, 2020, to July 12, 2020, Labrador regularly worked approximately thirty-five hours per workweek, working five days per week from approximately 3:00 p.m. to 11:00 p.m. each day, with a one-hour break each day.

76. From approximately July 13, 2020, to August 30, 2020, Labrador regularly worked approximately forty-nine hours per workweek, seven days per week from approximately 3:00 p.m. to 11:00 p.m. each day, with a one-hour break each day.

77. NY Prime paid Labrador his wages in cash every week.

78. On occasion, NY Prime paid Labrador his wages by check.

79. From approximately March 24, 2020, to March 31, 2020, NY Prime paid Labrador $15.00 per hour worked.

80. From approximately April 1, 2020, through June 30, 2020, NY Prime paid Labrador $21.00 per hour worked.

81. From approximately July 1, 2020, to the end of his employment, NY Prime paid Labrador $15.00 per hour worked, including for hours worked over forty per workweek.

## COLLECTIVE ACTION ALLEGATIONS

82.     Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Cleaning Workers (*i.e.*, non-exempt cleaning workers) for BMS CAT, Wyngate, and/or NY Prime within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

83.     The FLSA Collective consists of approximately fifty Cleaning Workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

84.     Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have performed virtually the same cleaning duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

85.     Defendants are aware or should have been aware that the FLSA required them to pay Cleaning Workers an overtime premium for hours worked in excess of forty per workweek.

86.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

87.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated Cleaning Workers can be readily identified and located through Defendants' records.  The similarly situated Cleaning Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

88.     The claims in this Complaint arising out of the NYLL are brought by Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt employees ("Cleaning Workers), who work or have worked for BMS CAT, Wyngate, and / or NY Prime since at least March 2020 (the "Rule 23 Class").

89.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

90.     The size of the Rule 23 Class is at least fifty individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.

91.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

92.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a.   whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

   b.   whether Defendant BMS CAT breached its contract with Sloan Kettering calling for payment of legally-required wages to workers performing work under the contract;

   c.   whether Defendants failed to pay non-exempt employees at the correct overtime rate for all time worked in excess of forty hours per week;

   d.   whether Defendants Wyngate and BMS CAT failed to pay non-exempt employees the minimum wage rates required by the NYLL;

13

e.  whether Defendants failed to provide non-exempt employees with accurate wage statements as required by the NYLL and WTPA;

f.  whether Defendants failed to furnish the New York Rule 23 Class with wage notices as required by the WTPA;

g.  whether Defendants BMS CAT and NY Prime failed to pay Cleaning Workers, who were manual laborers, on a weekly basis, in violation of NYLL § 191(1)(a); and

h.  the nature and the extent of the class-wide injury and the measure of damages for those injuries.

93.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period.  They enjoy the same statutory rights under the NYLL and the contract between BMS CAT and Sloan Kettering to be paid at the overtime rate for all hours worked over forty in a workweek. Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

94.     Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

95.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

96.     Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

97.     There is no conflict between Plaintiffs and the Rule 23 Class members.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and

procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

99.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### FIRST CLAIM
### (NYLL – Unpaid Minimum Wages)

100.     Plaintiffs Palacios and Xelo repeat and incorporate all foregoing paragraphs as if fully set forth herein.

101.     The NYLL and its supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees at least the minimum wage rate for the first 40 hours worked in a workweek.  See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142–2.1(a)(1)(i).

102.     Defendants BMS CAT and Wyngate are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 NYCRR § 142 *et seq*.

103.     Defendants BMS CAT and Wyngate employed Plaintiffs Palacios and Xelo and the Rule 23 Class within the meaning of the NYLL.

104.     As a result of Defendants BMS CAT's and Wyngate's wage payment practices, they failed to pay Plaintiffs Palacios and Xelo and the Rule 23 Class the

minimum wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

105.    Defendants BMS CAT and Wyngate willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs Palacios and Xelo and the Rule 23 Class minimum wages.

106.    As a result of Defendants BMS CAT's and Wyngate's willful violations of the NYLL, Plaintiffs Palacios and Xelo and the Rule 23 Class suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

**SECOND CLAIM**
**(Fair Labor Standards Act – Unpaid Overtime)**

107.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

108.    Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

109.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiffs and the FLSA Collective.

110.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

111.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

16

112.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### THIRD CLAIM
### (New York Labor Law – Unpaid Overtime)

113.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

114.    Pursuant to the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

115.    Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

116.    Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay, which could not be less than the minimum wage rate, per hour worked in excess of forty per workweek.

117.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

118.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### FOURTH CLAIM
### (NYLL § 191 – Frequency of Payments)

119.    Plaintiffs Palacios, Xelo, and Velasquez repeat and incorporate all foregoing paragraphs as if fully set forth herein.

120.    Defendants BMS CAT and Wyngate paid Plaintiffs Palacios, Xelo, and Velasquez and other Cleaning Workers on a bi-weekly basis.

121.    Throughout their employment, Cleaning Workers, including Plaintiffs Palacios, Xelo, and Velasquez, spent at least 25% of their working time performing physical tasks.

122.    Cleaning Workers, including Plaintiffs Palacios, Xelo, and Velasquez, were "manual workers" within the meaning of NYLL § 191(1)(a).

123.    Defendants BMS CAT and Wyngate should have paid Cleaning Workers, including Plaintiffs Palacios, Xelo, and Velasquez, on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. § 191(1)(a).

124.    Because Defendants failed to pay Cleaning Workers, including Plaintiffs Palacios, Xelo, and Velasquez, on a weekly basis, in addition to other recovery available to them as set forth in this Complaint, Cleaning Workers are entitled to recover liquidated damages equal to their wages paid a week late in every bi-weekly pay period.

**FIFTH CLAIM**
**(New York Labor Law – Failure to Provide Wage Notices)**

125.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

126.    The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

127.    Defendants failed to furnish to Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to Plaintiffs' and the Rule 23 Class's rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the

regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

128.     Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**SIXTH CLAIM**
**(New York Labor Law – Failure to Provide Accurate Wage Statements)**

129.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

130.     Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

131.     Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from the Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## SEVENTH CLAIM
**(Breach of Contract – Third Party Beneficiary)**

132.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

133.     BMS CAT entered into valid and binding contract with Sloan Kettering to provide workers to perform cleaning and disinfecting services at Sloan Kettering in New York City.

134.     Upon information and belief, the contract between BMS CAT and Sloan Kettering incorporated the requirements of the NYLL, including but not limited to the requirement to pay Cleaning Workers performing the cleaning and disinfecting services at Sloan Kettering at least their minimum and overtime wages, for manual laborers to be paid on a weekly basis, and for Cleaning Workers to receive wage notices and statements.

135.     As such, the contract between BMS CAT and Sloan Kettering intended, *inter alia*, for the foregoing as benefits for all Cleaning Workers performing the contracted-for services at Sloan Kettering.

136.     These benefits to Cleaning Workers were immediate, rather than incidental, and a material term in the contract between BMS CAT and Sloan Kettering.

137.     BMS CAT breached its contract with Sloan Kettering by failing to ensure that all Plaintiffs and all Cleaning Workers received (a) at least the minimum wage rate, (b) required overtime wages, (c) weekly wage payments, (d) accurate weekly wage statements, and (e) wage notices upon hiring.

138.     As a result of BMS CAT's breach of contract, Plaintiffs and all Cleaning Workers are entitled to recover their unpaid minimum and overtime wages, statutory damages, pre- and post-judgment interest, liquidated damages, and attorneys' fees and costs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.    certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.    declare that Defendant BMS CAT breached its contract with Sloan Kettering;

d.    declare that Defendants have violated the minimum wage provisions of the NYLL;

e.    declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

f.    declare that Defendants violated the frequency of payments provision of the NYLL;

g.    declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

h.    declare that Defendants' violations of the FLSA and NYLL were willful;

i.    award Plaintiffs Palacios and Xelo, the FLSA Collective, and the Rule 23 Class unpaid minimum wages;

j.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

k.      award Plaintiffs Palacios, Xelo, and Velasquez and the Rule 23 Class statutory damages as a result of Defendants' failure to pay wages on a weekly basis in violation of the NYLL;

l.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

m.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

n.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

o.      award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

p.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

q.      award such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury in this action.

Dated:  New York, New York
        January 8, 2021

                                          PECHMAN LAW GROUP PLLC

                                          By:s/*Louis Pechman*_____
                                              Louis Pechman
                                              Vivianna Morales
                                              Gianfranco J. Cuadra
                                              Pechman Law Group PLLC
                                              488 Madison Avenue, 17th Floor
                                              New York, New York 10022
                                              Tel.: (212) 583-9500
                                              pechman@pechmanlaw.com
                                              morales@pechmanlaw.com
                                              cuadra@pechmanlaw.com

                                              *Attorneys for Plaintiffs, the*
                                              *Putative FLSA Collective, and Putative*
                                              *Rule 23 Class*